UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JP MORGAN CHASE BANK, N.A.,

      Plaintiff,

                                    **Case No. 2:11-cv-543**

      v.                              **JUDGE EDMUND A. SARGUS, JR.**

                                      **Magistrate Judge Preston Deavers**

ERIECH HORVATH, et al.,

      Defendants.

## OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion to Dismiss Defendants'

Counterclaim (Doc. No. 12), which is hereby **GRANTED IN PART AND DENIED IN PART**.

## I. BACKGROUND

On July 20, 2006, Defendants Eriech and K.S. Horvath took out a residential mortgage

loan from Plaintiff JP Morgan Chase Bank, N.A. ("Chase"). In March 2009, the Horvaths sought

a loan modification from Chase. Ultimately, that loan modification request was denied.

On May 5, 2011, Chase filed a complaint in foreclosure in the Licking County, Ohio

Court of Common Pleas. On June 20, 2011, the Horvath's removed the case to this Court and on

that same day filed an Answer and Counterclaim. (Doc. No. 4.) The Horvath's allege

throughout their counterclaim that they applied for a loan modification under the Home

Affordable Modification Program ("HAMP") and that Chase wrongfully denied the loan

modification. The Horvath's aver that after the loan modification was denied, Chase "advised

[them] not to pay the mortgage, but that they should 'not worry' about being foreclosed upon."

(Doc. No. 4 at p. 10.)

On August 1, 2011, Chase filed a motion to dismiss the Horvath's Counterclaim, which is ripe for review.

## II. STANDARD

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure[1] a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L. Ed. 2d 868 (2009) (clarifying the plausibility standard articulated in *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

---

[1]The Horvaths intermingle the appropriate standard with incorrect statements of law, such as the Sixth Circuit being "uncertain" about the scope of *Twombly* and that "its holding is likely limited to expensive, complicated litigation like that considered in *Twombly*." (Doc. No. 17 at 6) (relying on *U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 502 n.6 (6th Cir. 2008) and *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 296 n.1 (6th Cir. 2008)). The Sixth Circuit, however, is not uncertain about the scope of *Twombly* and has unequivocally held that *Twombly* applies to all civil actions:

> The Supreme Court has recently clarified that its decision in *Twombly* "expounded the pleading standard for 'all civil actions,'" despite the fact that *Twombly* itself arose in the context of an antitrust suit. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1953, 173 L. Ed. 2d 868 (2009). The Court's decision in *Iqbal* made clear that the *Twombly* standard is not limited to "sprawling, costly, and hugely time- consuming" litigation, *Twombly*, 550 U.S. at 560 n.6, dispelling such speculation by courts both within and outside this circuit. *See, e.g. , U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 502 n.6 (6th Cir. 2008); *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 296 n.1 (6th Cir. 2008); *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 n.4 (6th Cir. 2007); *Iqbal v. Hasty*, 490 F.3d 143, 155-58 (2d Cir. 2007), *rev'd, Iqbal*, 129 S. Ct. at 1954.

*Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 fn.4 (6th Cir. 2009).

alleged." *Iqbal*, 129 S. Ct. at 1949.  The factual allegations of a pleading "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

## III. ANALYSIS

The Horvaths allege the following causes of action in their Counterclaim: (1) promissory estoppel, (2) violations of the Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01, *et seq.* ("OCSPA"), (3) fraud, (4) breach of the covenant of good faith and fair dealing, (5) violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), (6) negligent supervision, (7) violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq.* ("RESPA"), and (8) violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA").  Chase argues that each of these claims fail because (A) HAMP provides no private cause of action for denials of a requested loan modification, and (B) they fail to state plausible claims for relief.

### A. Home Affordable Modification Program

Many courts, including at least two sister district courts in Michigan, have determined whether or not HAMP provides a private right of action for failure to approve a loan modification.  *See Hart v. Countrywide Home Loans, Inc.*, 735 F. Supp. 2d 741 (E.D. Mich. 2010); *Hubert v. PNC Bank*, No. 10-13831, 2011 U.S. Dist. LEXIS 102603 (E.D. Mich. Sept. 12, 2011).  The Michigan courts, and virtually every court reviewing the issue, have held that HAMP does not provide for a private cause of action.  *See Hart, supra* (noting that there is no express or implied right to sue fund recipients under HAMP because HAMP does not create a private right of action); *Hubert, supra* ("Virtually every court has held that HAMP does not provide for a private cause of action."); *Singh v. Wells Fargo Bank*, No. 1:10-cv-1659, 2011 U.S. Dist. LEXIS

3563, at *23 (E.D. Cal. Jan. 7, 2011) ("[I]t is well established that there is no private cause of action under HAMP."); *Cade v. BAC Home Loans Servicing, LP*, No. H-10-4224, 2011 WL 2470733, at *2-3 (S.D. Tex. June 20, 2011) ("HAMP litigation is new and yet emerging; the majority of courts faced with HAMP questions, however, have determined that no private right of action to enforce lender compliance exists under HAMP."); *Inman v. Suntrust Mortg., Inc.*, No. 1:10-CV-1031, 2010 U.S. Dist. LEXIS 91804, at *6 (E.D. Cal. Sept. 3, 2010) ("there is no private right of action provided under HAMP"); *Zeller v. Aurora Loan Servs. LLC*, No. 3:10-cv-00044, 2010 U.S. Dist. LEXIS 80449, at *2 (W.D. Va. Aug. 10, 2010) (determining that HAMP does not create a private right of action for a borrower to recover for an alleged breach of a loan modification); *Hoffman v. Bank of Amer.*, No. C10-2121 SI, 2010 U.S. Dist. LEXIS 70455, *6 (N.D. Cal. June 30, 2010) ("Lenders are not required to make loan modifications for borrowers that qualify under HAMP nor does the servicer's agreement confer an enforceable right on the borrower."); *Simon v. Bank of Am., N.A.*, No. 10-cv-00300, 2010 U.S. Dist. LEXIS 63480, at *26-27 (D. Nev. June 23, 2010) ("Other courts have consistently held that the [HAMP] does not provide borrowers with a private cause of action against lenders."); *Marks v. Bank of Amer., N.A.*, No. 03:10-cv-08039, 2010 U.S. Dist. LEXIS 61489, at *13-15 (D. Ariz. June 22, 2010) ("Allowing such a large number of potential plaintiffs [by conferring third-party beneficiary status under HAMP] clearly contravenes the purpose of the HAMP as an administrative tool to effectuate the goals of the [Emergency Economic Stabilization Act of 2008, 12 U.S.C. § 5201 *et seq.*].").

Many courts rely upon *Marks* to explain why HAMP does not create a private right of action. The *Marks* court first concluded that the legislative history of HAMP demonstrates that

4

there is no express private right of action in HAMP:

> On October 8, 2008, President Bush signed into law the Emergency Economic
> Stabilization Act of 2008 . . . ("EESA").  Section 109 required the Secretary of the
> Treasury ("the Secretary") to take certain measures in order to encourage and
> facilitate loan modifications.  12 U.S.C. § 5219.  However, Section 109 did not
> create any private right of action against servicers for grievances relating to the
> EESA.
>
> The EESA authorized the Secretary of the Treasury, FHFA [Federal Housing
> Finance Agency], Fannie Mae, and Freddie Mac to create the Making Home
> Affordable Program on February 18, 2009, which consists of two components: (1)
> the Home Affordable Refinance Program, and (2) the HAMP.  The HAMP aims
> to financially assist three to four million homeowners who have defaulted on their
> mortgages or who are in imminent risk of default by reducing monthly payments
> to sustainable levels.
>
> The HAMP works by providing financial incentives to participating mortgage
> servicers to modify the terms of eligible loans.  On March 4, 2009, the Secretary
> issued guidelines under the HAMP requiring lenders to consider borrowers for
> loan modifications and suspend foreclosure activities while a given borrower was
> being evaluated for a modification.  U.S. Dep't of the Treasury, Home Affordable
> Modification Program Guidelines (March 4, 2009).
>
> Per designation by the Secretary, Freddie Mac serves as compliance officer for the
> HAMP.  U.S. Dep't of Treasury, Supplemental Directive 2009-08, at 4 (Nov. 3,
> 2009).  The HAMP requires mortgagees to collect, retain, and transmit mortgagor
> and property data to Freddie Mac in order to ensure compliance with the program.
> See Supplemental Directive 2009-01, at 13-14, 19-21 (Apr. 6, 2009);
> Supplemental Directive 2009-06 (Sept. 11, 2009).  As the compliance agent,
> Freddie Mac is charged with conducting "independent compliance assessments"
> including "evaluation of documented evidence to confirm adherence . . . to
> HAMP requirements" such as the evaluation of borrower eligibility.
> Supplemental Directive 2009-01, at 25-26.

On that basis, the *Marks* court concluded that:

> Nowhere in the HAMP guidelines, nor in the EESA, does it expressly provide for
> a private right of action.  Rather, Congressional intent expressly indicates that
> compliance authority was delegated solely to Freddie Mac.  By delegating
> compliance authority to one entity, Freddie Mac, Congress intended that a private
> cause of action was not permitted.

*Id.* at \*15 (citation omitted).  The *Marks* court also concluded that no implied cause of action

existed under HAMP.  *See id.* at \*17-18 and \*20.

For the reasons set forth by the *Marks* court (and in many of the similar cases cited

above), the Court finds that Congress did not provide homeowners such as the Horvaths with a

private cause of action under HAMP.  Accordingly, the Court **GRANTS** Chase's motion to

dismiss the Hovath's causes of action set forth in their Counterclaim to the extent that those

claims rely on Chase's denial of a home modification loan.

This conclusion, however, does not dispose of all of the Horvath's causes of action.

While the allegations in their Counterclaim are certainly not the model of clarity in this regard,

they have pleaded that Chase wrongfully foreclosed upon their property after they were informed

that the loan modification was denied.  It was then that Chase allegedly advised them "not to pay

the mortgage, but that they should 'not worry' about being foreclosed upon."  (Doc. No. 4, ¶ 10.)

To the extent that the Horvath's claims are based upon these facts, the Court will determine if

any plausible claims for relief are alleged in the Counterclaim.

## B.  Claims Based Upon Wrongful Foreclosure After Denial of Loan Modification

### 1.  Promissory Estoppel

The elements of a claim of promissory estoppel[2] are: "(1) a clear and unambiguous

promise; (2) reliance on that promise; (3) reliance that was reasonable and foreseeable; and (4)

---

[2]The United States Supreme Court held in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002), the *prima facie* case "is an evidentiary standard, not a pleading requirement."  The Court reviews the *prima facie* case standard in the Rule 12(b)(6) context to determine whether a counterclaiming defendant has stated a plausible claim for relief–not to determine if the standard is met.

damages caused by that reliance." *Current Source, Inc. v. Elyria City Sch. Dist.*, 157 Ohio App. 3d 765, 773 (Ohio Ct. App. 2004) (citing *Healey v. Republic Powdered Metals, Inc.*, 85 Ohio App. 3d 281, 284 (Ohio Ct. App. 1992)). *See also Brown v. Columbus Bd. of Educ.*, 638 F. Supp. 2d 856, 868 (S.D. Ohio 2009) (citing *Healey* for this promissory estoppel standard).

Here, the Horvaths allege that Chase made an unambiguous promise that it would not foreclose on the property if the Horvaths stopped making mortgage payments. They allege that is was therefore foreseeable and reasonable for them to stop making their mortgage payments, which ultimately led to foreclosure. The Horvaths aver that they chose to forego other avenues to save their home, from which the Court can reasonably infer that they would have continued to make the payments had they not detrimentally relied upon Chase's alleged promise. Because this matter is before the Court on a motion to dismiss under 12(b)(6), the Court is reluctant to find, as a matter of law, that it is unreasonable to rely upon an undocumented oral statement to the effect that a borrower need not continue to make mortgage payments. Therefore, the Court finds at this juncture in this case that the Horvaths have alleged sufficient facts to support a plausible claim for relief for promissory estoppel.

Accordingly, the Court **DENIES** Chase's motion to dismiss the Horvath's promissory estoppel claim based upon its promise not to foreclose on their property for failure to pay the mortgage.

### 2. Ohio Consumer Sales Practices Act

Chase first argues that the Horvath's claim under the OCSPA cannot survive a motion to dismiss because that statute does not apply to Chase or to any transaction alleged to have occurred between Chase and the Horvaths. The OCSPA defines a "consumer transaction" as "a

7

sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual . . . ." Ohio Rev. Code § 1345.01(A). In addition, while Ohio Revised Code § 1345.01(C) provides that a "supplier" is a "person engaged in the business of effecting or soliciting consumer transactions," the statute also provides at subsection (A) that the term "consumer transaction" does not include transactions between persons "defined in section . . . 5725.01 of the Revised Code and their customers," which includes "financial institutions," defined as "national bank associations," savings and loan associations, state banks, trust companies, and other banking institutions. *See* Ohio Rev. Code § 5725.01. Thus, Chase concludes that, because it is a bank, it cannot be a supplier and therefore is not subject to the OCSPA.

The Horvaths, however, contend that "the simple fact that [Chase] acts as a lender in some transactions does not exclude it from liability for its actions as a [loan] servicer." (Doc. No. 17 at 12.) The Horvaths rely on *Drozeck v. Lawyers Title Ins. Corp.*, 140 Ohio App.3d 816 (Ohio Ct. App. 2000) for this proposition. In that case, the defendant insurance company argued that the OCSPA claim against it should be dismissed for failure to state a claim upon which relief can be granted because, as is the case with banks, the OCSPA does not apply to insurance companies. The *Drozeck* court denied the defendant's motion to dismiss, indicating that while the defendant may be exempt from the OCSPA when it acted in the capacity of an insurance company, it had not shown that it acted in that capacity in the consumer transaction at issue there. Instead, the opposite. The defendant insurance company admitted that it served as an escrow agent for the plaintiff. Likewise, in the instant action, while Chase may be exempt from the OCSPA in its capacity as a bank, it has admitted that in the transaction at issue here it acted as a

8

mortgage loan servicer.

Chase next argues that the Horvaths "provide the Court with no basis to conclude a qualifying transaction has been pled in the first place." (Doc. No. 20 at 5.) The Horvaths, however, point out that the Ohio Supreme Court has certified three questions of state law from the Northern District of Ohio that go to that exact issue:

> 1. "Does the servicing of a borrower's residential mortgage loan constitute a 'consumer transaction' as defined in the Ohio Consumer Sales Practices Act., R.C. 1345.01(A)?"
>
> 2. "Does the prosecution of a foreclosure action by a mortgage servicer constitute a 'consumer transaction' as defined in the Ohio Consumer Sales Practices Act., R.C. 1345.01(A)?"
>
> 3. "Is an entity that services a residential mortgage loan, and prosecutes a foreclosure action, a 'supplier . . . engaged in the business of effecting or soliciting consumer transactions' as defined in the Ohio Consumer Sales Practices Act., R.C. 1345.01(C)?'"

*State ex rel. DeWine v. GMAC Mortg. L.L.C.*, 129 Ohio St. 3d 1446 (2011).

Thus, the state of the law in Ohio is not so clear that this Court can say at this juncture that the Horvaths have not pleaded a recognizable consumer transaction under the OCSPA. Consequently, the Court concludes that the Horvaths have alleged a claim that is plausible on its face under the OCSPA. Accordingly, the Court **DENIES** Chase's motion to dismiss as it relates to the Horvath's OCSPA claim.

### 3. Fraud

Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." In the Sixth Circuit, the Rule 9(b) requirement is read "liberally, . . . requiring a plaintiff, at a

minimum, to allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Coffey v. Foamex L.P.*, 2 F.3d 157, 161- 62 (6th Cir. 1993) (internal quotation marks and citation omitted). The Horvaths are clear in their Counterclaim and in their explanation of the allegations related to their fraud claim that it is based entirely on Chase's failure to approve the Horvath's request for a loan modification, which, as the Court explained *supra*, cannot support a private cause of action. In their memorandum in opposition to Chase's motion to dismiss, the Horvaths explain:

> Cognizant the Plaintiff might be confused or unclear as to what the factual allegations making up Defendants' fraud claim consisted of, Defendants went so far as to state the following in the counterclaim:
>
>> In other words, to be specific in an attempt to satisfy the heightened pleading standard of fraud, Counterclaim Defendant led Counterclaim Plaintiffs to believe they would be approved for a permanent loan modification. Counterclaim Plaintiffs reasonably relied upon this promise and in so doing, forewent other avenues to save their home. Counterclaim Defendant knew it would never approve Counterclaim Plaintiffs for a loan modification. Counterclaim Defendant did not want Counterclaim Plaintiffs to seek other avenues to save their home because of Counterclaim Defendant's omnipresent ulterior motive to foreclose on the Property.

(Doc. No. 17 at 15-16) (quoting Doc. No. 4, ¶ 35).

As discussed *supra*, HAMP does not provide for the relief the Horvaths seek. Even if a private right of action were available, the Horvaths have failed to meet the pleading requirement that they at least allege the time, place, and content of the alleged misrepresentation on which they relied. Consequently, the Court **GRANTS** Chase's motion to dismiss as it relates to the Horvath's fraud claim.

### 4. Breach of the Covenant of Good Faith and Fair Dealing

Chase argues that it is entitled to dismissal of the Horvath's claim for a breach of the covenant of good faith and fair dealing because that claim cannot stand without a partner claim for breach of contract. This Court agrees.

It is well established under Ohio law that, "an allegation of a breach of the implied covenant of good faith cannot stand alone as a separate cause of action from a breach of contract claim." *Krukrubo v. Fifth Third Bank*, No. 07AP-270, 2007 Ohio App. LEXIS 6140, at *12 (Ohio Ct. App. Dec. 27, 2007) (The duty of good faith and fair dealing being integral to any contract, the breach of that duty, when alleged, is thus integral to the plaintiff's cause of action for breach of contract. Accordingly, "an allegation of a breach of the implied covenant of good faith cannot stand alone as a separate cause of action from a breach of contract claim . . . .") (citations omitted). The Horvaths do not dispute this law, and instead, argue for a good faith extension of the law based upon a bill that allegedly has been introduced in the Ohio Senate related to regulation of residential mortgage servicers. The Horvath's argument, however, is too tenuous to save their claim from dismissal. Accordingly, the Court **GRANTS** Chase's motion to dismiss as it relates to the Horvath's claim for breach of the covenant of good faith and fair dealing.

### 5. Fair Credit Reporting Act

Chase submits that the Horvath's FCRA claim must be dismissed because the Horvaths did not allege sufficient facts to state a cause of action under 15 U.S.C. § 1681s-2(a)(1)(A) ("A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate."). While the Court is simply at a loss to understand the Horvath's response in opposition to Chase's

motion to dismiss this claim, one thing is clear from it and from the allegations in the Counterclaim – the Horvaths have not pleaded a cause of action under 15 U.S.C. § 1681s-2(a) but have instead moved under subsection (b) of that statute. Thus, Chase's arguments related to why the Horvath's allegations do not sufficiently state a claim for relief under subsection (a) miss the mark.

As to subsection (b) of 15 U.S.C. § 1681s-2, the Horvath's rely upon *Bridge v. Ocwen Fed. Bank*, for the proposition that "there is a private cause of action under 15 U.S.C. § 1681s-2(b) which (according to plaintiffs) provides that when a furnisher of credit information receives notice of a dispute regarding the accuracy of information it has provided to a consumer credit reporting agency, such furnisher of credit information must take proper action to investigate and correct any discrepancies in the reporting." 669 F. Supp. 2d 853, 861 (N.D. Ohio 2009). The *Bridge* court determined that the defendant's motion to dismiss should be granted because the plaintiff did not plead a claim under subsection (b) of the statute. *Id.* ("The Court agrees with Ocwen's position that there is no private cause of action under the section of the statute relied upon by plaintiffs, *i.e.*, 15 U.S.C. § 1681s-2(a); and that the plaintiffs have not pled a claim under 15 U.S.C. § 1681s-2(b) which does provide a private cause of action.").

In the instant action, however, the Horvaths specify in the Counterclaim that they bring their claim "[p]ursuant to 15 U.S.C. § 1681s-2(b) [which provides] a private cause of action against [Chase.]" (Doc. No. 4, ¶ 47.) The Horvaths also allege that, as required by the statute, they provided notice to the credit reporting agency that Chase had given the agency inaccurate information. Whether the credit reporting agency properly notified Chase, whether Chase engaged in the proper investigation, and whether Chase timely attempted to correct any

inaccurate information it provided, if there was any, is not information within the Horvath's knowledge. The Court finds that these allegations are sufficient to state a plausible claim under the FCRA, 15 U.S.C. § 1681s-2(b). Accordingly, the Court **DENIES** Chase's motion to dismiss as it relates to the Horvath's FCRA claim.

### 6. Negligent Supervision

The Horvaths are clear in their Counterclaim and in their explanation of the allegations related to their negligent supervision claim that it is based entirely on Chase's failure to approve the Horvath's request for a loan modification, which, as the Court explained *supra*, cannot support a private cause of action. (Doc. No. 17 at 18-19) ("Discovery will show that [Chase] approves less than 5% of all applicants for permanent loan modifications, . . . [and] employees of [Chase] were ill equipped and ill trained to properly evaluation [the Horvaths] for a permanent loan modification[.]") Thus, the Court **GRANTS** Chase's motion to dismiss as it relates to the Horvath's claim for negligent supervision.

### 7. Real Estate Settlement Procedures Act

The Horvaths allege that "in connection with the mortgage loan to [the Horvaths, Chase] accepted charges for the rendering of real estate services which were in fact charges for other than services actually performed." (Doc. No. 4, ¶ 55.) In its motion to dismiss, Chase argues that the statute of limitations for claims asserted under RESPA relating to loan origination is one year, 12 U.S.C. § 2614, and that the Horvath's loan was taken on July 20, 2006, four years outside of the statute of limitations period. In response, the Horvaths claim that Chase has waived its statute of limitations defense because it did not preserve it in its answer and that, even if Chase had preserved the defense, it is unavailable based on the continuing violations doctrine.

This Court disagrees.

Chase correctly explains that Rule 12 of the Federal Rules of Civil Procedure states that "[n]o defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion." Fed. R. Civ. P. 12(b). In the case sub judice, instead of filing an answer, Chase filed a motion under Rule 12(b) and joined its statute of limitations defense in that motion. Thus, Chase has not waived its statute of limitations defense.

As to the continuing violations doctrine, the Horvath's entire reference to it in its memorandum is:

> Here, [Chase] has thus forfeited its statute of limitations defenses, if any were even available, which they are not due to the continuing violation doctrine.

(Doc. No. 17 at 20) (citing four Sixth Circuit cases that all relate to the waiver of a statute of limitations defense). Without addressing any specific facts upon which the Horvaths may be attempting to rely related to this doctrine (or whether the doctrine applies in RESPA cases), at a minimum the continuing violations doctrine requires a continuing violation. *See Rodrigue v. Olin Employees Credit Union*, 406 F.3d 434. 442 (7th Cir. 2005) (continuing violations doctrine applies when "a tort involves a continued repeated injury" and "the limitation period does not begin until the date of the last injury or when the tortious act ceased"). The Horvaths pleaded only that the violation occurred at the time they took out their mortgage. Thus, the Court concludes that this doctrine has no application here.

Accordingly, the Court concludes that the Horvaths have failed to state a claim under RESPA upon which relief can be granted. Thus, the Court **GRANTS** Chase's motion to dismiss as it relates to this claim.

### 8. Fair Debt Collection Practices Act

"The FDCPA prohibits the use of 'any false, deceptive, or misleading representation or means in connection with the collection of any debt'" by a debt collector. *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 400 (6th Cir. 1998) (citing 15 U.S.C. § 1692e). Chase argues that it is not subject to the FDCPA for the reasons discussed *infra*. The Horvaths respond by attaching an unauthenticated document to their memorandum in opposition (Doc. No. 17-2) that appears to be a document from Chase and indicates that "Chase is a debt collector." The Horvaths then state as the entirety of their argument as to why Chase is subject to the FDCPA that, based on the attached document "it is curious the basis for Chase's assertion that it is not a 'debt collector' in its motion to dismiss[.]" (Doc. No. 17 at 20.) The Court agrees with Chase that it is not subject to the FDCPA.

The purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). If a court finds that a party has violated the FDCPA, the court may hold that party liable for monetary damages. *Id.*, § 1692k.

In this case, the Horvaths allege only that Chase is a "debt collector" under the FDCPA and that Chase "engaged in false and misleading representations" and "engaged in unfair practices" in violation of the statute. The Horvath's claim against Chase necessarily fails because it is a creditor-lender, and not a "debt collector" bound by that statute. As this Court explained in an analogous situation:

The term "debt collectors" refers to "any person who uses any instrumentality of

> interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692(a) (6). However, that term expressly does not include "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor." § 1692(a)(6)(A). Mortgage companies collecting debts are not "debt collectors." *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) (noting that legislative history of the act indicates that a "debt collector" does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt as long as the debt was not in default at the time it was assigned). As to Defendant Countrywide, therefore, this cause fails as a matter of law. *See Williams v. Countrywide Home Loans*, 504 F. Supp.2d at 190.

*Miller v. Countrywide Home Loans*, 747 F. Supp. 2d 947, 962 (S.D. Ohio, 2010).

The Horvaths do not allege that Chase is in a business the principal purpose of which is the collection of any debts, or that it regularly collects or attempts to collect directly or indirectly, debts owed or due or asserted to be owed or due to another. Actually, the opposite is established by the pleading. The Horvaths allege that they originated their mortgage loan with Chase, stayed with Chase through the attempted loan modification process, and that Chase filed a foreclosure action against them for failure to pay the debt owed to Chase–not some other entity. There are simply no facts alleged to support the Horvath's bare assertion that Chase is a debt collector. Instead, the Horvaths merely provide a "threadbare recital" of the elements a FDCPA cause of action, which is insufficient. *Iqbal*, 129 S. Ct. at 1949 (citation omitted). The Horvath's "obligation to provide the 'grounds' of [their] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). Although the Court must accept well pleaded factual allegations as true for purposes of a motion to dismiss, it is not bound to accept as true a legal conclusion couched as a factual allegation. *See id.*

16

As to the document the Horvaths attached to their memorandum in opposition, even if it were admissible and appropriately considered on a motion to dismiss, the fact that Chase self-identified as a "debt collector" does not make it one under the FDCPA. *See Martin v. Select Portfolio Serving Holding Corp.*, No. 1:05-cv-273, 2008 U.S. Dist. LEXIS 16088, *12 (S.D. Ohio 2008) (in the court's conclusions of law: "Defendants' self-identification as a debt collector did not make SPS a debt collector under the FDCPA.") (citation omitted). Consequently, it cannot save this claim.

Accordingly, the Court **GRANTS** Chase's motion to dismiss as it relates to the Horvath's FDCPA claim.

## IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion to Dismiss Defendants' Counterclaim. (Doc. No. 12.) Specifically, the Court **GRANTS** the motion as it relates to all claims based upon Chase's alleged wrongful denial of a loan modification and the Horvath's fraud, breach of the covenant of good faith and fair dealing, negligent supervision, RESPA, and FDCPA claims, and **DENIES** the motion as it relates to the Horvath's promissory estoppel and OCSPA claims to the extent they are based on Chase's alleged wrongful foreclosure and their FCRA claim. The Clerk is **DIRECTED** to remove Chase's motion (Doc. No. 12) from the Court's pending motions list.

**IT IS SO ORDERED.**

3-23-2012
_____
**DATE**

_____
**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**

17